UNITED STATES of America, Appellant,

v.

George E. ABERL, et al., Appellees.

No. 3:93CV7607.

United States District Court,
N.D. Ohio,
Western Division.

Nov. 2, 1994.

Eugene F. Canestraro, Cline, Cook & Weisenburger, Fred E. Henning, Gross & Henning, Toledo, OH, for appellees.

Henry J. Riordan, Dept. of Justice, Washington, DC, Verne K. Armstrong, Robert G. Trusiak, Office of the U.S. Atty., Toledo, OH, for appellant.

## OPINION AND ORDER

JOHN W. POTTER, Senior District Judge:

This action is before the Court on appellant's appeal from the bankruptcy court's order discharging appellees' 1981 and 1983 income tax liabilities pursuant to 11 U.S.C. § 523(a)(1)(A).

On November 27, 1991, appellees filed a petition in bankruptcy court under Chapter 7 of Title 11. Prior to the petition, appellees made a formal written offer in compromise of their federal tax liability for the years 1979 through 1984. This offer in compromise was made on August 21, 1990 and was submitted on a form prescribed by the Internal Revenue Service (IRS) as required by the Treasury Regulations. *See* 26 C.F.R. § 301.7122–1(d). On October 19, 1990, the IRS assessed appellees with deficiencies for the tax years 1981 and 1983 in the amount of $26,630.40 and $2,326.46, respectively. The IRS rejected the pending offer in compromise on March 12, 1991.

In a letter from the IRS, appellees were notified of their right to appeal within fifteen days of receiving written notification of the rejection. In the same letter, the IRS representative informed appellees that "[i]f you have any questions, please feel free to contact me." Record at 9. In a subsequent letter informing appellees of the rejection, the IRS notified them that "[i]f you have any questions regarding the offer, you may contact the person whose name and telephone number appears in the heading of this let-

ter." Record at 8. Appellees did not avail themselves of the opportunity for a written appeal. However, nearly three months after the offer in compromise was rejected, their attorney, Alan Mikesell, sent a letter to the IRS representative identified as appellees' contact person. The letter stated in part:

I urge you to reconsider Mr. Aberl's offer in light of the fact that he is currently hospitalized for the second time for cancer and I can only believe that his earning capacity will continue to decline. I would also urge you to re-evaluate the value of his assets. I firmly believe that the $35,-000 which he is offering exceeds the total value of all of his assets.

Record at 23. The IRS sent a second rejection letter to appellees on February 5, 1992. Record at 25.

Appellees filed a complaint to determine the dischargeability of their debt owed to the IRS. The bankruptcy court found that the taxes assessed by the IRS against appellees for the 1981 and 1983 tax years were assessed more than 240 days before the date of the filing of the Chapter 7 petition and, therefore, were not entitled to priority under 11 U.S.C. § 507(a)(7)(A)(ii). The court further found that neither the formal offer in compromise submitted August 21, 1990, nor attorney Mikesell's letter dated June 4, 1991, served to toll the running of the 240 day period set forth in § 507(a)(7)(A)(ii). Accordingly, the bankruptcy court held that these taxes should be discharged under 11 U.S.C. § 523(a)(1)(A), 159 B.R. 792.

Appellant raises two assignments of error. First, appellant contends that the taxes at issue are non-dischargeable priority taxes under 11 U.S.C. § 507(A)(7)(a)(ii) because any offer in compromise which is pending within 240 days of a tax assessment tolls that period of time. Second, appellant contends that the taxes at issue are non-dischargeable priority taxes because appellees renewed their offer in compromise within 240 days after the taxes at issue were assessed.

■■■ On appeal, a finding of fact by the bankruptcy court may only be overturned if it is clearly erroneous. *See DuVoisin v. Foster*, 809 F.2d 329 (6th Cir.1987). The bankruptcy court's conclusions of law, howev-

er, are reviewed *de novo*. *Stephens Indus., Inc. v. McClung*, 789 F.2d 386 (6th Cir.1986).

Appellant's first assignment of error focuses on the interpretation of 11 U.S.C. § 507(a)(7)(A)(ii) and the statute's applicability to the offer in compromise submitted by appellees on August 21, 1990, before the taxes were assessed for years 1981 and 1983. Section 523(a)(1)(A) excepts taxes specified in § 507(a)(7) from the discharge granted under Chapter 7 of the Bankruptcy Code. Section 507 provides in relevant part:

(a) The following expenses and claims have priority in the following order:

.   .   .   .   .

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

.   .   .   .   .

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition....

11 U.S.C. § 507(a)(7)(A)(ii).

Thus, in order for the tax debt at issue to be non-dischargeable, the IRS must have assessed the taxes within 240 days before appellees filed their Chapter 7 petition, unless an offer in compromise was "made within 240 days after [the] assessment," in which case this time limitation is tolled while the offer is pending. *Id.* The taxes assessed by the IRS against appellees for tax years 1981 and 1983 were assessed more than 240 days before the date of the filing of the petition. Consequently, the taxes are a dischargeable debt unless the tolling provision applies.

Appellant contends that, although the offer in compromise was made before the tax assessment, the tolling provision of § 507(a)(7)(A)(ii) should apply because the offer was still pending after the assessment. Appellant argues that the legislative history clearly intended such an application and that

the bankruptcy court's interpretation of the statute is at odds with the intentions of the drafters. In support of this argument, appellant cites the Senate Report and joint floor statements explaining the statute.

■ A court may depart from the literal application of a statute only where the literal application will produce a result "demonstrably at odds with the intentions of the drafters." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). The legislative history cited by appellant clearly indicates that Congress intended to provide tax collectors a reasonable time to collect taxes. S.Rep. No. 989, 95th Cong., 2d Sess. 14 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5800. However, it also clearly indicates that Congress intended to provide the debtor with a "fresh start" unburdened by an accumulation of taxes for past years. *Id.* Congress, having the sole authority to determine the manner in which these goals should be carried out, set forth with particularity those taxes that should remain non-dischargeable. *See* 11 U.S.C. § 507(a)(7).

■ Although appellant contends that an offer in compromise made *before* a tax assessment should be construed as an offer in compromise made *after* an assessment, this Court declines to do so. Nowhere in the legislative history cited by appellant is there any indication that Congress intended to include situations in which the debtor made an offer in compromise before the tax is assessed, nor is it ambiguous on this point. Rather, both the Senate Report and the Congressional Record clearly reveal that the only situation considered by Congress is that in which an offer is made after the assessment.[1] As one court concluded:

It is not the Court's role to address perceived inadequacies in the [statute]. "What the [petitioner] asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function."

*Wolf Creek Collieries v. Robinson*, 872 F.2d 1264, 1269 (6th Cir.1989), *quoting Iselin v. United States*, 270 U.S. 245, 251, 46 S.Ct. 248, 250, 70 L.Ed. 566 (1926).

Appellant also directs the Court's attention to an unreported case from the district of Hawaii, *Cumiford v. Commissioner (In re Cumiford)*, Ch. 7 Case No. 8600271, Adv. No. 87–0013 (D.Haw. April 14, 1988). *Cumiford* is the only case found to have dealt with the applicability of § 507(a)(7)(A)(ii) to an offer in compromise made before the tax assessment. In that case, the district court concluded that "an offer made before the assessment is 'made within the 240 days after the assessment' for purposes of the statute." *Id.* at 5. The court based this conclusion on an ambiguity in the statutory phrase "made within the 240 days after the assessment," and its interpretation of the legislative history as making it clear that Congress intended § 507(a)(7)(A)(ii) to include an offer made before an assessment.

■ However, as discussed above, the legislative history indicates that Congress only considered situations where an offer is made after an assessment. Furthermore, this Court finds no ambiguity in the statutory phrase at issue. The statute clearly refers only to offers made after a tax assessment. Statutes providing exceptions to dischargeability should be construed strictly. *Manu-*

1. "This rule closes a loophole under present law under which, *following an assessment of tax*, some taxpayers have submitted a formal offer in compromise...." S.Rep. No. 989, 95th Cong., 2d Sess. 71 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5857.

"If, *following assessment of a tax*, the debtor submits an offer in compromise to the governmental unit, the House amendment provides that the 240–day period is to be suspended for the duration of the offer and will resume running

after the offer is withdrawn or rejected.... Under the modified rule, *if after the assessment*, an offer in compromise is submitted by the debtor and is still pending (without having been accepted or rejected) at the date on which a title 11 petition is filed, the underlying liability will receive [seventh] priority." 124 Cong.Rec. H. 11,-112 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards), 124 Cong.Rec.S. 17,429 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini) (quoted in *In re Davidson*, 120 B.R. 777, 786 (Bankr. D.N.J.1990).

*facturers Hanover Trust Co. v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir.1988). In the absence of a clear demonstration of Congressional intent, this Court is unwilling to depart from the language of the statute itself. Accordingly, appellant's first assignment of error is not well taken.[2]

■ In its second assignment of error, appellant contends that the taxes at issue are non-dischargeable, priority taxes because the letter written to the IRS by attorney Mikesell renewed appellees' offer in compromise within 240 days after the tax assessment.

Treasury Regulation § 301.7122–1 provides that "offers in compromise shall be submitted on forms prescribed by the Internal Revenue Service...." 26 C.F.R. § 301.7122–1(d). It further provides that:

> No offer in compromise shall be accepted unless the taxpayer waives the running of the statutory period of limitations on both or either assessment or collection of the tax liability involved for the period during which the offer is pending....

26 C.F.R. § 301.7122–1(f).

There is no question that Mikesell's letter itself did not constitute a form prescribed by the IRS. In addition, the letter did not contain a waiver of the statute of limitations as required by § 301.7122–1(f). Because the requirements of § 301.7122–1 are mandatory in nature, *see Boulez v. Commissioner*, 810 F.2d 209, 215 (D.C.Cir.1987), the letter alone cannot be deemed an offer in compromise.[3]

However, appellant argues that the Court should consider the letter, not alone, but in conjunction with the original offer in compromise which was submitted on prescribed IRS Form 656 and find that the mandates of

§ 301.7122–1 were fulfilled.[4] In support of this argument, appellant cites *Keating v. United States*, 794 F.Supp. 888 (D.Neb.1992) and *Waller v. United States*, 767 F.Supp. 1042 (E.D.Cal.1991). However, these cases are distinguishable on their facts.

Although, in both cases, the court considered both Form 656 and later letters amending the terms of agreement between the taxpayer and the IRS, in neither case had there been a rejection of the original offer in compromise. In *Keating*, the court viewed the letters as memorializing amendments to the original offer which were the result of subsequent negotiations. In *Waller*, the taxpayer's amendment letter was composed by the IRS and offered additional consideration for acceptance of the offer in compromise. The court concluded that the letter represented a collateral agreement such as that is provided for in Treasury Regulation § 301.7122–1(d)(3).[5]

In the case at bar, the IRS rejected appellees' offer in compromise on March 12, 1991, and appellees did not appeal this rejection. Attorney Mikesell's letter dated June 4, 1991 did not attempt to amend a pending offer, nor can it be considered a collateral agreement. Thus, the Court finds *Keating* and *Waller* inapposite to the facts of this case.

Appellant also argues that as long as the offer in compromise is originally submitted on Form 656, the IRS may dispense with any requirement contained in Treasury Regulation § 601.203(b) that a taxpayer submit multiple Forms 656 throughout the course of negotiations. The Court agrees that, under *Keating* and *Waller*, amendments to the original offer in compromise arising pursuant to negotiations between the taxpayer and the

---

2. The Court also rejects appellant's argument that the provision in Form 656 signed by appellees waiving the benefit of any statute of limitations denies appellees the benefit of the 240 day period set forth in 11 U.S.C. § 507(a)(7)(A)(ii). This section merely defines a priority tax. Congress was aware of the requirement under Treasury Regulation § 301.7122–1(f) that all offers in compromise must contain such a waiver, yet still provided that the 240 day period is tolled only during the time period that the offer in compromise is pending.

3. The Court notes that a letter may be an offer in the contractual sense and still fail to meet the requirements of an offer in compromise which, if accepted would bind the debtor. Thus, every offer is not an offer in compromise.

4. Form 656 also contains the required waiver of the statute of limitations.

5. Treasury Regulation § 301.7122–1(d)(3) states, "As a condition to accepting an offer in compromise, the taxpayer may be required to enter into any collateral agreement...." 26 C.F.R. § 301.7122–1(d)(3).

IRS need not be submitted on Form 656. However, as stated above, Mikesell's letter did not attempt to amend the prior offer. Furthermore, the bankruptcy court found that the IRS had rejected appellees' offer in compromise, had refunded the amount tendered with the offer, and had commenced collection activities against appellees. Thus, the course of negotiations had apparently terminated.

This Court agrees with the bankruptcy court's conclusion that the letter at issue represented nothing more than appellees' attempt to respond to the letters informing them of the rejection. This conclusion is bolstered by the provisions of Treasury Regulation § 601.203(d) which allows a taxpayer to contact the IRS before filing a formal offer in compromise in order to "explore the possibilities of compromising unpaid tax liability" and to "determine the amount which may be accepted as a compromise." 26 C.F.R. § 601.203(d). Thus, the Court finds appellant's second assignment of error not well taken.

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that the order of the bankruptcy court be, and hereby is, AFFIRMED.